UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW EUGENE GLENN,

       Petitioner,

                                        Case No. 1:08-cv-1002
v.                                      Hon. Robert J. Jonker

JOHN PRELESNIK,

       Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, Amadeus Eugene Glenn, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.        Background**

Following a joint jury trial with co-defendant Anthony Worth, petitioner was convicted of armed robbery, M.C.L. § 750.529, and conspiracy to commit armed robbery, M.C.L. § 750.157a. *People v. Glenn*, No. 260500, slip op. at 1 (Mich. App. Dec. 14, 2006) (docket no. 24). Petitioner's convictions stem from the armed robbery of Ms. Sue Schertz, a clerk at the Pair-a-Dice Inn in Christmas, Michigan. Trial Trans. II at pp. 276-305. The Michigan Court of Appeals summarized the underlying facts as follows:

> Defendants' convictions arise from the robbery of a convenience store and gas station attached to the Pair-A-Dice Inn in Christmas, Michigan on March 29, 2004, at approximately 4:30 a.m. An alleged coconspirator, John Zardus, took $345 after threatening to shoot a store clerk with a BB handgun. By the time of trial, Zardus had pleaded guilty to the robbery. Before Zardus entered the store, defendants entered the store, where they stayed for approximately five minutes, and Worth purchased a soft drink. Later Zardus entered the store and committed the robbery. The prosecutor's theory of the case was that defendants assisted Zardus by helping him steal the BB gun from a nearby Wal-Mart, drove Zardus to the

convenience store, entered the store first to "check it out," and assisted Zardus after
he took the money.

*Id.*, slip op. at 1-2.

On December 15, 2004, the trial court sentenced petitioner to concurrent prison terms
of 10 to 20 years for each conviction.  Sent. Trans. at p. 13 (docket no. 22).  Petitioner moved for
a new trial and re-sentencing, based in part on the prosecution's failure to disclose plea negotiations
related to a prosecution witness, David Johnson.  The court denied this motion after a hearing held
on August 1, 2005.  Motion Trans. at pp. 3, 33-37 (docket no. 23).

Petitioner, through counsel, presented five issues (with numerous sub-issues) on
appeal:

I.      Is [petitioner] entitled to dismissal of charges to a new trial because
        the prosecution's failure to disclose evidence directly affecting the
        credibility of [David] Johnson violated [petitioner's] constitutional
        right to confrontation and to due process?

II.     Did rampant prosecutorial misconduct during closing argument, and
        the trial, deprive [petitioner] of his constitutional right to a fair trial?

III.    Was [petitioner] deprived of due process because the jury was given
        a vague and incomplete jury instruction in violation of M.C.L. §
        768.32 and the Supreme Court's holding in *People v. Cornell*?
        Alternatively, counsel was constitutionally ineffective for failing to
        request an instruction on all elements of the offense?

IV.     Did the prosecution present insufficient evidence to support
        [petitioner's] convictions on either the armed robbery or the
        conspiracy charge?

V.      Is [petitioner] entitled to resentencing because the state and federal
        due process clauses prohibit scoring points under Offense Variable
        13 for a juvenile matter?

Brief on Appeal (docket no. 24).

2

The Michigan Court of Appeals affirmed petitioner's conviction.  *See People v. Glenn*, No. 260500.  Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied.  *See People v. Glenn*, No. 133745 (Mich. July 30, 2007) (docket no. 25).

Glenn, through counsel, filed a petition in this court seeking a writ of habeas corpus pursuant to § 2254.  Petition (docket no. 1).  The court directed Glenn to file an amended petition on the form provided by this court.  Order (docket no. 3).  Petitioner, through counsel, filed an amended petition, raising two issues:

I.    Did rampant prosecutorial misconduct during closing argument and the trial deprive [petitioner] of his constitutional right to a fair trial? Alternatively, was his counsel ineffective for failing to object?

II.   Is [petitioner] entitled to dismissal of charges or a new trial because the prosecutor's failure to disclose evidence directly affecting the credibility of Johnson violated [petitioner's] constitutional right to confrontation and due process?

Amended Petition (docket no. 4).

## II.    Procedural default

Respondent contends that petitioner's prosecutorial misconduct claims as set forth in Issue I are procedurally defaulted.  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim,

unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

Because petitioner did not comply with the state's contemporaneous-objection rule, the Michigan Court of Appeals treated his claims of prosecutorial misconduct as waived on direct appeal and reviewed those claims only for plain error. *See People v. Glen*, No. 260500, slip op. at 4-5 ("Defendants concede that no objections to the claimed instances of prosecutorial misconduct at trial. Thus, these claims of error are not preserved . . . because Glenn failed to preserve any objection to prosecutorial misconduct, and Worth failed to preserve all but one such claim, this Court reviews them for plain error affecting defendants' substantial rights"). Trial counsel's failure to object resulted in a procedural default of these claims. *See Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007). While the state court performed a plain error analysis of the defaulted claim, this limited court review does not save a petitioner from procedural default. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) . "Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Id.* (citations omitted). *See also, Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default).

Petitioner has asserted ineffective assistance of trial counsel as cause for the procedural default of his numerous claims of prosecutorial misconduct.[1] Given the number and nature of claims subject to procedural default, determining whether cause and prejudice exists to excuse the defaults raises a number of complex issues. Under the circumstances of this case, the

---

[1] It appears petitioner raised this argument in the Michigan Court of Appeals, although he did not identify it in the titles of his five listed issues in that court.

court will review the merits of the defaulted claims rather than undertake the laborious task of performing a procedural default analysis as to each of these claims. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2004) ("[t]he U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits").

### III.   Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted the issues raised in his amended petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, -- F.3d --, 2011 WL 3903439 at *5 (6th Cir. Sept. 7, 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV. Discussion

### A. Prosecutorial misconduct

Before habeas corpus relief becomes available for prosecutorial misconduct, such misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). Here, petitioner contends that the prosecutor engaged in prosecutorial misconduct by making a number of improper statements. "We analyze claims of prosecutorial misconduct based on improper statements under a two-part test: we ask first whether the remarks were improper, and then whether they were flagrant and warrant reversal." *United States v. Gabrion*, 648 F.3d 307, 349 (6th Cir. 2011), citing *United States v. Carroll*, 26 F.3d 1380, 1387–88 (6th Cir.1994).

In applying the first part of the test, the court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* However, prosecutors cannot offer their opinions as to credibility of a witness or the guilt of a defendant, or discuss any purported facts not introduced into evidence. *Id.*

Even if the court finds the prosecutor's conduct was improper, the court can provide federal habeas corpus relief only if the statements meet the second part of the test, i.e., the statements were so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly*, 416 U.S. at 643-45; *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). At this point, "[t]he relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations

7

omitted).  "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'"  *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  The court should consider four factors in determining whether a prosecutor's improper remarks are so flagrant as to rise to the level of a due process violation: (1) the likelihood that the prosecutor's remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately placed before the jury; and (4) the total strength of the evidence against the accused. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

> **1.    The prosecutor committed misconduct by attacking petitioner's intelligence, education, and morals, and by making impermissible appeals to class bias**.

Petitioner contends that the prosecutor "systematically elicited character evidence relating to petitioner that was fraught with prejudicial stereotypes of a poor, unemployed, uneducated youth."  Petitioner's Brief at p. 13 (docket no. 2). The prosecutor then deliberately repeated this evidence in her closing argument "as a basis to prejudge [petitioner] an inveterate liar," which resulted in a denial of petitioner's constitutional right to a fair trial.  *Id.*

The Michigan Court of Appeals set forth a thorough discussion of petitioner's claims of alleged prosecutorial misconduct.  Rather than paraphrase the state court's review of these claims, the undersigned will quote the relevant portions of the appellate court's opinion.  The Michigan Court of Appeals addressed petitioner's claim that the prosecutor denigrated the criminal defendants as follows:

> The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial.  *People v. Watson*, 245 Mich. App 572, 586; 629 NW2d 411

8

(2001). The propriety of a prosecutor's comments depends on the facts of the particular case. *People v. Thomas*, 260 Mich. App 450, 454; 678 NW2d 631 (2004). This Court reviews the pertinent part of the record and examines the prosecutor's remarks in context to determine whether the defendant received a fair and impartial trial. *Id.* "A prosecutor may not intentionally inject inflammatory arguments with no apparent justification except to arouse prejudice." *People v. Lee (After Remand)*, 212 Mich. App 228, 247; 537 NW2d 233 (1995), citing *People v. Bahoda*, 448 Mich. 261, 266; 531 NW2d 659 (1995). However, a prosecutor may argue the evidence and all reasonable inferences arising from the evidence that relate to the theory of the case, and need not state arguments in the blandest possible terms. *People v. Aldrich*, 246 Mich. App 101, 112; 631 NW2d 67 (2001). Moreover, "the prosecutor's comments must be considered in light of defense counsel's arguments." *People v. Messenger*, 221 Mich. App 171, 181; 561 NW2d 463 (1997). Thus, a comment that might otherwise be improper "may not rise to an error requiring reversal when the prosecutor is responding to defense counsel's argument." *People v. Kennebrew*, 220 Mich. App 601, 608; 560 NW2d 354 (1996).

\*      \*      \*

Both defendants raise similar claims that the prosecutor improperly denigrated them by attempting to prejudice the jury against them. These claims fall within three general categories. First, defendants maintain that the prosecutor injected irrelevant evidence about defendants' and Zardus's living arrangements, employment history, and socioeconomic status. Second, defendants maintain that the prosecutor improperly attacked their intelligence, education, and morals during closing argument. Third, defendants complain that the prosecutor improperly introduced evidence that Amber McGuire [FN3] had been fired from Wal-Mart for stealing, and that a police officer was familiar with defendants from previous encounters.

a. Evidence of defendants' and Zardus's personal information

Defendants argue that the prosecutor improperly introduced evidence of their and Zardus's employment status and living arrangements, and the fact that none of them owned a car. They maintain that this information was irrelevant and prejudiced the jury against persons of defendants' poor economic and social status. They also maintain that the jury could have improperly used the fact that they were poor to conclude that they participated in the robbery.

The evidence of defendants' and Zardus's living arrangements was relevant to show the connections between them. Defendants were charged with aiding and abetting Zardus in the robbery, and with conspiracy. Glenn was living with McGuire on the night of the robbery and, at that time, Worth and Zardus also stayed there. Zardus testified that he was living with Glenn at the time of the robbery. Worth told

9

the police that Zardus wanted to commit the robbery because he was tired of living with friends and having no money, thereby injecting his financial status as a motive for the robbery. In this conspiracy case, the prosecutor made a good-faith effort to introduce evidence linking defendants to each other and to Zardus.

Likewise, the evidence that Zardus did not own a car and that Worth and Glenn also did not own cars or have driver's licenses was also relevant. This evidence, as well as the evidence linking McGuire to Glenn as his girlfriend, supported McGuire's testimony that she drove the others around and sometimes loaned them her car because she was the only one in the group who had a car. This in turn linked the group to the car used in the robbery, as well as to testimony by officers who had seen defendants and McGuire together near the Wal-Mart. The introduction of this relevant evidence was not misconduct on the part of the prosecutor.

Defendants also complain about the introduction of their employment status. Glenn did not work at the time of the robbery and Worth was employed as a dishwasher. They maintain that questions about their employment status were improper because poverty or unemployment is generally not admissible to show a motive to steal. *See People v. Henderson*, 408 Mich. 56, 66; 289 NW2d 376 (1980).

The prosecutor first elicited this testimony in response to defense counsel's cross-examination of McGuire. Earlier on the night of the robbery, defendants, Zardus, and McGuire went to a gas station. Glenn's attorney asked McGuire whether defendants had any money with them. On redirect examination, the prosecutor asked McGuire about defendants' sources of funds. Given that the prosecutor's question was a direct response to defense counsel's questions, defendants have not shown that the prosecutor's questioning was plainly improper. *See People v. Smith*, 80 Mich. App 106, 114-117; 263 NW2d 306 (1977).

Zardus's employment status was relevant. Zardus told Worth that he intended to rob the store because he was broke and tired of having to live with friends. The accuracy of this information was relevant to establishing whether Worth and Glenn believed that Zardus intended to rob the store. This was directly at issue in determining whether defendants were guilty as aiders and abettors.

In any event, the prosecutor did not argue that defendants had a motive to participate in the robbery because of their financial status. None of her arguments about defendants directly touched upon their employment status. The prosecutor's comments merely contain references, albeit ambiguous ones, to defendants' "peer group" activities and beliefs. Considered in context, the remarks were not clearly intended as a reference to defendants' economic status, but rather that defendants' actions could be explained by the fact that they had a criminal mindset. Defendants have not shown plain error.

b.  Amber McGuire's theft and previous police interaction with defendants

Defendants argue that the prosecutor impermissibly elicited testimony from a Wal-Mart associate that McGuire had been fired from her position for stealing cigarettes.  This evidence was relevant.  Defendants admitted to the police that they assisted Zardus in taking a BB gun from the store.  Michigan State Police Trooper Dale Hiller  [FN4] knew that McGuire worked in the store as a cashier.  McGuire owned the car that defendants were driving.  Sergeant Grahovac, who viewed the Wal-Mart security tape with the loss-prevention associate, testified that he initially thought that McGuire was with defendants in the store on the evening of the robbery, although it was actually Zardus.  The loss prevention associate testified that the police asked him about McGuire's employment status.  Wal-Mart employees were also questioned about the positions of the security cameras in the store, and particularly about the lack of a camera in the area where the gun was taken.  The questioning was probative of whether McGuire could be linked to the theft of the BB gun, at least as someone who provided information to the defendants and Zardus. McGuire could have developed some animosity toward the store after having been discharged.  Under the circumstances, we cannot say that the prosecutor clearly committed misconduct by proffering this evidence.

The testimony concerning defendants' and McGuire's prior interactions with the police was likewise relevant.  The information was elicited to show, among other things, how the police recognized defendant Glenn's distinctive clothing preferences, how the police recognized McGuire's automobile, which led them to the Wal-Mart, and the fact that defendants were cousins.  These items were in turn relevant to the scope of the investigation and the identification of defendants as participants in the conspiracy and robbery.  In addition, this Court has held that "the circumstances surrounding a confession, including a suspect's prior contacts with the police, [are] a pertinent factor to put before the jury in its weighing of the reliability of a defendant's statement to the police."  *People v. Snider*, 239 Mich. App 393, 419; 608 NW2d 502 (2000).  Defendants have not shown plain misconduct in the prosecutor's introduction of this evidence.

In addition, as with the information concerning McGuire, any prejudicial effect could have been cured by an appropriate instruction had an objection been made. Under the circumstances, defendants have not demonstrated outcome-determinative plain error in the introduction of this evidence.

c.  Closing argument commentary

Defendants present a list of allegedly improper comments during closing argument wherein the prosecutor allegedly insulted defendants' and Zardus's intelligence, accused them of lying, and accused them of having a gang mentality.

11

They argue that the prosecutor's comments were highly prejudicial and denied them a fair trial.

"A prosecutor must refrain from denigrating a defendant with intemperate and prejudicial remarks." *People v. Bahoda*, 448 Mich. 261, 283; 531 NW2d 659 (1995). However, the prosecutor need not choose the blandest of terms when discussing the evidence. *Aldrich*, *supra* at 112. Indeed, this Court has regarded "emotional language" in closing argument as "an important weapon in counsel's forensic arsenal." *People v. Ullah*, 216 Mich. App 669, 679; 550 NW2d 568 (1996), quoting *People v. Mischley*,164 Mich. App 478, 483; 417 NW2d 537 (1987).

Here, defendant challenges a number of the prosecutor's remarks. For example, the prosecutor stated that the witness oath was "meaningless" for people in defendants' "peer group" and that they valued self-preservation and loyalty. The prosecutor argued that there were many instances where defendants "didn't have the brain power to figure out whether their answer would help or hurt, and they are-end up being stuck with the truth." The prosecutor also argued that defendants goaded Zardus into the robbery and that he was "one of the pathetic kids on the fringe of a bad group" who would have been regarded as a "Wimp. Coward. More likely * * * * *" had he not robbed the store. She characterized defendants' attempts to limit their culpability as "self-serving crap" that did not pass the "fall-down laughing test." She also maintained that Zardus's decision to take the blame for the robbery would score him points with the rest of his peer group.

These remarks approach intemperance. However, viewed as a whole, they were designed to explain the prosecutor's theory of why Zardus and the others had agreed to have Zardus take the blame for the crime. They also explained why Worth's initial statements to the police were more inculpatory than his trial testimony. Further, they addressed defendants' credibility, and were also calculated to further the prosecutor's goal that the jury believe the inculpatory portions of defendants' statements and testimony while disbelieving the exculpatory portions. Considering that the latitude afforded to a prosecutor is broad, and that the purpose of the statements was not gratuitous denigration, we find that the comments were not improper.

Defendants have not demonstrated outcome-determinative error. The trial court instructed the jury that the prosecutor's arguments were not evidence, and that it was to base its decision only on the evidence presented. A jury is presumed to follow instructions. *People v. Graves*, 458 Mich. 476, 486; 581 NW2d 229 (1998). To the extent this general instruction was insufficient, any prejudicial effect could have been cured by a further appropriate instruction had defendants objected. Therefore, defendants have not shown that they are entitled to appellate relief. *Ackerman*, *supra* at 448-449.

[FN3. Worth initially gave Sergeant Grahovac the alibi that he, Worth, Glenn and a third man (D.J.Chapman) were driving downstate to Flint in Amber McGuire's car at the time the robbery occurred. McGuire owned the car defendants were driving at the time of the conspiracy and robbery.]

[FN4. Trooper Hiller testified that he spoke with defendants and later with Grahovac, and that he knew that Glenn's girlfriend, McGuire, owned a black 1993 Crown Victoria (the same kind of vehicle used in the robbery). Hiller testified that he knew defendants and McGuire through investigating other incidents in Marquette County where the three were suspects. Hiller also testified that on the morning in question he noticed McGuire's car make an illegal left turn leaving the Wal-Mart parking lot between 12:30 and 12:50 a.m. He could not identify the driver but saw a person matching Glenn's description in the front passenger's seat and at least one other person in the back seat.]

*People v. Glenn*, No. 260500, slip op. at 5-6, 8-11.

The Michigan Court of Appeals properly found that there was no prosecutorial misconduct on these grounds. In support of his claim, petitioner relies on the legal standard as set forth *Berger v. United States*, 295 U.S. 78, 88 (1935), in which the court stated that a prosecutor "may prosecute with earnestness and vigor," and that "while he may strike hard blows, he is not at liberty to strike foul ones." Applying that standard, petitioner asserts that the state court violated his constitutional rights because that court "unreasonably construed the boundary between 'hard blows' and impermissible 'foul ones.'" Petitioner's Brief at p. 14. Petitioner has adopted an incorrect standard. In *Henley v. Bell*, 487 F.3d 379 (6th Cir. 2007), the Sixth Circuit pointed out that the legal standard in *Berger*, upon which petitioner relies, does not apply to federal habeas review of a state court conviction:

"In *Berger v. United States*, the Supreme Court counseled United States Attorneys 'to refrain from improper methods calculated to produce a wrongful conviction.' 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). *Berger* was, however, decided on direct review where the Court could 'broad[ly] exercise [its]

13

supervisory power.' *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). **At this habeas stage, [the petitioner] must show that any prosecutorial misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'** *Donnelly*, **416 U.S. at 643, 94 S.Ct. 1868.**"

*Henley*, 487 F.3d at 389 (emphasis added). In applying the appropriate two part test for prosecutorial misconduct, *see, e.g., Gabrion*, 648 F.3d at 349, the court concludes that the prosecutor did not engage in misconduct.

"A fundamental rule of evidence is that a defendant's 'bad character' cannot be used to argue that the defendant committed the crime for which he is being tried, or had the propensity to commit that crime." *Washington v. Hofbauer*, 228 F.3d 689, 699 (6th Cir. 2000). For this reason, the court may find prosecutorial misconduct when a prosecutor dwells on a criminal defendant's bad character to "overpersuade" the jury to the extent that the jury prejudges the defendant based upon a bad general record. *Id.*, quoting *Michelson v. United States*, 335 U.S. 469, 478 (1948).

Here, the prosecutor argued that there were multiple stories presented to authorities and to the jury, providing in pertinent part as follows:

And you will also need to look at whether their testimony is externally consistent with known facts and circumstances and whether it's internally consistent with the rest of their testimony. So, as you can see, there is [sic] really three versions of events here. I'll go over each one of them in turn.

There is our version based on the facts and the circumstances. There is the defendants' original version, meaning their third final version [sic] to police. And then we have the defendants' version now, meaning now that they understand what aiding and abetting is all about. And I want to talk about the reasons to accept or reject each version.

But you don't have to accept our version in order to convict the defendants. Their original version, along with all the facts and circumstances, is more than sufficient to satisfy the elements of both aiding and abetting armed robbery and conspiracy to commit armed robbery.

I'm presenting our version just to make it crystal clear to you that we don't endorse the defendants' original version as being anything resembling the whole truth. You know, their statements begin with these just bald-face lies, and they were evolving towards the whole truth when they were arrested. But we were only halfway there. You know, it's not like there was any point in -- in trying to, you know, making further interviews because there were no additional facts with which they could be confronted. So there wasn't really more to be gained. I just want to make clear that we were only halfway into the truth when they were arrested.

Trial Trans. V at pp. 909-10 (docket no. 21).

In addition to the statements identified by the Michigan Court of Appeals, petitioner points to the prosecutor's allegedly improper statements regarding the values of his peer group. The prosecutor's summary on that point is as follows:

Now, you've had a glimpse of what passes for values in this peer group. As I've already said, they don't value the truth for its own sake. But they do value loyalty. The defendants' early efforts to protect Zardus were motivated by self-interest. They knew he could rat them out. He didn't though, Zardus took all the risks, took the risks at Walmart and at the Pair-a-dice [sic], and then he tried to take the rap, unpersuasively, but he tried. And his status in this peer group is, I'm sure, is assured.

And that's one of the things that really frosts me about this situation is these defendants or any criminal defendants sitting next door at the jail and deciding according to their pecking order and their logic who should be convicted of crimes, and deciding among themselves what they all need to say to make that happen. And they don't get to decide; you do.

Trial Trans. V at pp. 925-26.

The court does not find the prosecutor's statements to be improper. Prosecutors are given wide latitude to argue their case during closing argument. *Boyd*, 640 F.3d at 669. They are not required to present closing arguments that are "devoid of all passion." *Id.,* quoting *Byrd*, 209 F3d at 532. Here, the prosecutor's theory of the case required the development of background information to explain how petitioner and his co-defendants developed the conspiracy to commit the robbery and the manner in which they executed it. The prosecutor's closing argument did not use

15

"bad character" evidence as a basis for obtaining a conviction.  Rather, the prosecutor's argument "connected the dots" for the jury to explain the government's theory of the crime.

Furthermore, while the prosecutor referred to petitioner's peer group and characterized the original statements as "bald-face lies," petitioner has not shown that the prosecutor improperly maligned his character or demonized him.  Courts have found that worse characterizations of criminal defendants were not improper.  *See, e.g., United States v. Boyd*, 640 F.3d 657, 670 (6th Cir. 2011) (in referring to the defendant, the prosecutor's statement that "some humans are just not human" was unnecessary but did not require setting aside the conviction); *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) ("[c]alling [the defendant] a 'demon' comes closer to the line - it was unnecessary and unprofessional - but it goes no further than similar comments that have not required setting aside a state conviction").  *Compare, Washington*, 228 F.3d at 699-700 (court found that prosecutor engaged in misconduct by arguing that the crime of sexually assaulting a nine-year-old girl "fit" the defendant, where the defendant was a "self-serving, illogical selfish non-compassionate, no emotional interest in a family type of person" who acted irrationally due to "drugs and alcoholism and a general not caring about other people")  The court concludes that the prosecutor's references regarding petitioner's peer group and background were not improper.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief on this claim.

**2.     The prosecutor committed misconduct by denigrating defense counsel.**

Petitioner contends that the prosecutor "implied that defense counsel was retained to assist defendants in fabricating a story to cover their guilt."  Petitioner's Brief at p. 16.  Petitioner points to the following portion of the prosecutor's closing argument:

> The defendants' current version of events was clearly crafted while - - while all three were cellmates at the Alger County Jail, or in the same cell block . . .  *You've heard that all three defendants have since their arrest had access to their lawyers*, to all the police reports, to the testimony presented at the preliminary examinations and to all the time in the world to fix their mistake, *to come up with a story that would fit the known facts*.

*Id.* at p. 17, quoting Trial Trans. at p. 918 (emphasis added by petitioner).

The Michigan Court of Appeals addressed this issue in detail, providing in pertinent part as follows:

> On cross-examination, the prosecutor asked defendant Worth whether, after he obtained an attorney, "[W]as the difference between aiding and abetting and accessory after the fact explained to you?"  Both Glenn and Worth now argue that this questioning was improper because any advice from counsel was privileged.  Defendant Glenn also argues that the prosecutor improperly denigrated defense counsel during closing argument when she suggested that defendants and Zardus came up with their story in jail after having access to counsel:
>
> > You've heard that all three defendants have since their arrest had access to their lawyers, to all the police reports, to the testimony presented at the preliminary examination, and to all the time in the world to fix their mistake, to come up with a story that would fit the known facts.
>
> Defendants argue that this argument implied that their attorneys told them to lie.
>
> A prosecutor does not commit misconduct by making a good-faith effort to admit evidence, even where the evidence is of marginal relevance.  *People v. Noble*, 238 Mich. App 647, 660; 608 NW2d 123 (1999).  We disagree with defendants' arguments that the prosecutor improperly sought to compel defendants to disclose privileged communications with their attorneys.  Instead, the question posed by the

17

prosecutor was substantively geared toward eliciting whether defendant Worth, and also defendant Glenn, knew the difference between guilt as an aider and abettor, and as an accessory after the fact, and had a chance to discuss it among themselves and with Zardus. This questioning and argument were relevant to the prosecutor's contention that Worth and Zardus were intentionally fabricating portions of their testimony to admit conduct that only fit the elements of accessory after the fact, an uncharged crime. The prosecutor did not commit misconduct. *Id.*

Defendant Glenn's related challenge to the prosecutor's closing argument is similarly without merit. "A prosecutor cannot personally attack the defendant's trial attorney because this type of attack can infringe upon the defendant's presumption of innocence." *Kennebrew*, *supra* at 607. Here, however, the statement that defendants and Zardus had ample opportunity to speak with each other in jail and to conform their testimony to the known facts was not a personal attack on defense counsel. It was instead a fair comment on defendant Worth's opportunity to fabricate portions of his testimony and the fact that his admissions to the police were more inculpatory than his trial testimony. It is not improper for the prosecutor to argue that a defendant had the opportunity to fabricate. *People v. Buckley*, 424 Mich. 1, 15; 378 NW2d 432 (1985). Glenn has not shown plain error.

*People v. Glenn*, No. 260500, slip op. at 7.

The Michigan Court of Appeals properly found that there was no prosecutorial misconduct on these grounds. Petitioner relies on *Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990), which found that a prosecutor could not mislead the jury and "strike at the core of the right to counsel" by suggesting to the jury that the defendant hired an attorney to generate an alibi, "take care of everything" or get his story straight. The prosecutor's brief reference to petitioner and the other charged individuals meeting with their attorneys did not mislead the jury into concluding that petitioner asked his defense counsel to generate an alibi. Taken in context, the prosecutor's statement sought to explain the different versions of events given by petitioner and Worth, e.g., their original version of events in which they claimed to be with another individual (D.J. Chapman) at the time of the robbery and their later version in which they admitted being with Zardus at the time of the robbery. Trial Trans. V at p. 912. The prosecutor could (and did) properly argue the record,

highlight inconsistencies and "forcefully assert reasonable inferences from the evidence." *Cristini*, 526 F.3d at 901. These statements by the prosecutor were not improper.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

### 3.   The prosecutor committed misconduct by using inflammatory, irrelevant arguments to denigrate the defense.

Petitioner contends that the prosecutor engaged in improper conduct "when she mocked [petitioner's] defense using a pair of irrelevant, inapposite and inflammatory analogies." Petitioner's Brief at p. 18.

The Michigan Court of Appeals also addressed this issue in detail, providing in pertinent part as follows:

> Defendants argue that the prosecutor improperly compared them to murderers in an attempt to inflame the jury. During closing argument, the prosecutor presented the following analogy:
>
> > So the defense presented during this trial is a rather technical legal one. In effect, the defendants are saying, oh, we're guilty, but it's just of a different charge. If only the prosecutor had charged us with being accessories after the fact.
> >
> > And that's not really an unfamiliar argument. I'll run through some other examples. A woman secretly gives birth to a live infant, seals it in a garbage bag where it expires, and leaves the bag in a public place, and then says: If only the prosecutor had charged me with improperly disposing of human remains.
> >
> > A man who imagines - imagines himself to be in a love triangle, follows two co-workers home, shoots them both in their front yard, and then says: If only the prosecutor had charged me with

19

reckless use of a firearm, hey, I'd be all over that. I'd plead guilty to that.

My point is that these charges, like accessory after the fact, they do fit some of the facts, but they don't begin to address what really happened. In fact, they're insulting to the victim.

\*       \*       \*

Although the prosecutor's analogy was vivid and in questionable taste, it was designed (a) to show that defendants were not simply accessories after the fact, (b) to refute defense counsels' contrary arguments, and (c) to point out logical deficiencies in the defense theory. This was a proper justification for the use of the analogy. Under the circumstances, defendants have not shown that the prosecutor's comments were clearly improper.

*Id.*

The Michigan Court of Appeals properly found that there was no prosecutorial misconduct on these grounds. Petitioner's defense included an argument that he was not an aider and abettor in the robbery, that he was merely an accessory after the fact, and that the government failed to charge him with the crime he may have committed, i.e., being an accessory after the fact. In support of this defense, the jury instructions addressed the distinction between aiding and abetting and being an accessory after the fact:

And the defendants are not charged with being accessories after the fact. However, you must be careful to distinguish between aiding and abetting and -- which is a theory of guilt of the crime charged from accessory after the fact, which is a separate and uncharged crime.

The distinction or difference between an aider and abettor and an accessory after the fact is that the aider and abettor is aware of and intends to further commission of the underlying offense prior to its completion. The underlying offense being the armed robbery. While the accessory after the fact does not decide to assist the perpetrator until -- in this case Mr. Zardus, until after the crime has ended, so as to help Mr. Zardus avoid discovery, arrest, trial or punishment.

Trial Trans. V at pp. 967-68.

20

In closing argument, the prosecutor noted that petitioner had given incriminating statements to the police and that based on these statements, petitioner would claim that while these facts made him guilty of being an accessory after the fact, the government failed to charge him with that particular crime. Trial Trans. V at pp. 918-21.   The prosecutor used the analogies in an attempt to explain this anticipated defense to the jury.

During their closing arguments, both petitioner's counsel and co-defendant Worth's counsel asserted the anticipated defense that their clients were at most accessories after the fact to the robbery.  For example, after asking the jury to consider whether petitioner and Worth were guilty of conspiracy and aiding and abetting in the robbery, Worth's counsel provided the jury with a third option:

> Now, they could have been guilty of something completely different. Absolutely.  But that option is not in front of you.  You don't have that option, and you have to ignore it.  They could very well have been charged with accessory after the fact, but they're not.  That's not available.  You have only a limited choice.  They either were aiders and abettors, active participants in the robbery, or they weren't.
>
> *        *        *
>
> And you have to be satisfied beyond a reasonable doubt, every single one of you, as to all of those elements.   Are they guilty of something? Possibly. Accessories after the fact, probably.  But they're not charged with that.
>
> *        *        *
>
> They can very well be guilty of something else, but your choice is only what's before you.  And I wish you the best of luck in searching that out, each and every one of you.  And we'll await your decision.  Thank you.

Trial Trans. V at pp. 935-36, 939 .

Petitioner's counsel made similar arguments to the jury:

> So I think when you retire into the jury room after listening to the judge's instructions pertaining to conspiracy to commit armed robbery and armed robbery

21

and aiding and abetting and the difference between aiding and abetting and accessory after the fact, I would ask that you focus on corroborated conduct of Tony Worth with Amadeus Glenn that evening.

*Id.* at p. 952.

Under these circumstances, the prosecutor's use of the analogies was not improper. As the Michigan Court of Appeals pointed out, these comments were designed to show the jury that petitioner and Worth were not simply accessories after the fact, to refute defense counsels' contrary arguments, and to point out logical deficiencies in the defense theory. While the analogies involved violent acts, petitioner was charged with armed robbery, itself a violent act. Given the charged crimes, the asserted defense, and the jury instructions, the prosecutor's analogies served a legitimate function in these proceedings. The court does not consider these analogies improper.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented, 28 U.S.C. § 2254 (d), and petitioner is not entitled to relief on this claim.

### 4. The prosecutor committed misconduct by vouching for the veracity of the police.

Petitioner contends that the prosecutor engaged in misconduct by vouching for the credibility of Alger County Sheriff Sergeant Grahovac, who testified that he accidentally erased a portion of the surveillance tapes from the Pair-A-Dice Inn. Petitioner's Brief at pp. 20-21.

The Michigan Court of Appeals addressed this issue in detail, providing in pertinent part as follows:

Defendant Glenn argues that the prosecutor improperly vouched for the testimony of Alger County Sheriff Sergeant Anthony Grahovac when, while describing his inadvertent erasure of a portion of the store's videotape, she stated that

22

he was "devastated" by the erasure. A prosecutor may not vouch for the credibility of a witness by expressing a personal opinion about the witness's truthfulness or by implying that she has some special knowledge of that truthfulness. *Thomas*, *supra* at 455.

The prosecutor's statement was made in response to the defense's implication that the erasure (of the portion of the tape where defendants left the store and allegedly signaled to Zardus that the coast was clear), was "a violation of fair play" and prejudiced the defendants' ability to defend the charges. The prosecutor did not ask the jury to convict defendants based on special knowledge. Grahovac did testify that his erasure of the tape was accidental. The prosecutor's comment attempted to address the testimony and rebut the insinuation raised by defendants. This comment was not improper.

Defendant Glenn also maintains that the prosecutor improperly vouched for the credibility of police witnesses by maintaining that they "faithfully" reported defendants' statements. We disagree. The prosecutor was attempting to rebut defendants' arguments that the police fabricated the statements and "spoon fed" the facts to defendant Worth who was trying to cooperate so that he would receive favorable treatment.

*People v. Glenn*, No. 260500, slip op. at pp. 6-7.

The Michigan Court of Appeals properly found that there was no prosecutorial misconduct on these grounds. "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness' credibility thereby placing the prestige of [the prosecutor's office] behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). Improper vouching involves either "blunt comments" or "comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Id.* The comments regarding Sergeant Grahovac were made in rebuttal to the closing arguments of both defense counsel. In his closing argument, Worth's Counsel noted that the "only videotape" showing petitioner and Worth leaving the convenience store (when they had the opportunity to signal Zardus to commit the robbery) was "[e]rased by the police." Trial Trans. V at p. 937. After pointing out Sergeant Grahovac's actions,

and touching on whether Grahovac acted intentionally (i.e., "I'm not saying it was intentional at all") Worth's counsel went on to speak of "self-preservation" and "loyalty" within law enforcement. *Id.* at pp. 937-38.

For his part, petitioner's counsel pointed out that this critical portion of the surveillance tape viewed by Grahovac, which purportedly showed petitioner and Worth leaving that convenience store without Zardus, had been erased. *Id.* at pp. 943-44. Petitioner's counsel agreed with Worth's counsel that the erasure of this evidence was not intentional, but "it may have been a consequence of zeal" on the part of Grahovac. *Id.* Petitioner's counsel went on to blame the prosecution for losing this evidence:

Think about it. We get one set of original evidence, and you're going to analyze it, and you don't think to make a copy, a working copy, of that set before pressing the buttons to review it? You've got exclusive custody of that evidence. That I blame on the prosecution. Shouldn't have happened. I mean, it's a no-brainer. You make a copy of original evidence before you fuss with it. And that wasn't done, and as a result we've lost part of that evidence.

And then on top of losing that evidence, admitted by a prosecution witness, we have conjecture. During that period of time, [Worth] and [petitioner] had the opportunity to sign [Zardus]. Right during that part of the tape, the only part of the surveillance tapes that's missing. It's erased. If that doesn't strike you as a violation of fair play, if you don't have a problem with that, I ask you to perform a bias test, turn the tables.

What if I, the defense attorney, had exclusive custody of those tapes, originals, gave them back to the prosecution and part of it was missing, erased. I said, oh, must have been an administrative assistant who did it, or I did it, but it was an accident. How would you feel about that looking at me? You have a problem with that? And if you do have more of a problem with that than what happened here, then I ask you to check your bias at the door because that's bias.

If you've got a problem with it, it should be the same problem. You should have the same feelings regardless of how it happened, whether it was done by Sergeant Grahovac or done by me. Whenever you have doubt in your mind, perform that bias test. Am I looking at this from the wrong perspective? Am I being unfair? Turn the table. Look at it from the opposite side and determine how you feel. And

if you feel differently, then determine whether you are approaching it from the biased perspective.

Trial Trans. at pp. 943-44.  Petitioner's counsel further argued that the "surveillance tape" was reliable evidence, which revealed the "heart and soul" of petitioner.  Trial Trans. at p. 952.

It was within this context that the prosecutor, in responding to the arguments of co-defendants' counsel, stated that:

> Our position is and has always been that their [i.e., petitioner and Worth] leaving the store and driving away was the signal, that there was -- there isn't anything to be seen and that there wasn't anything to be seen on the tape.  Sergeant Grahovac was devastated by that erasure, and that criticism is pretty unfair.

*Id.* at p. 956.  This statement does not amount to improper vouching.  *See Francis*, 170 F.3d at 550.  Rather, the comments were in response to arguments made by both defense counsel which suggested that Sergeant Grahovac, out of zeal or loyalty, erased the tape.  A prosecutor is entitled to respond to defense counsel's arguments, and a defendant cannot complain that the prosecutor's comments are improper when defense counsel invited the prosecutor's reply. *United States v. Wall*, 130 F.3d 739, 745 (6th Cir. 1997).  "The prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009).

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief on this claim.

### 5. The prosecutor committed misconduct by appealing to the jurors' sense of civic duty.

Petitioner contends that the prosecutor engaged in misconduct by appealing "to the jurors' broader sense of civic duty and justice to right the wrong that [petitioner] had allegedly inflicted on [] Zardus by enforcing the 'values' and 'pecking order' inherent to the 'peer group' of poor uneducated youth."  Petitioner's Brief at p. 22.

The Michigan Court of Appeals addressed this issue in detail:

> Defendants argue that the prosecutor improperly appealed to the jurors' sense of civic duty during closing arguments when she maintained that a guilty verdict was the only "fair" one for the victim and the only "just" one for Zardus (because he would otherwise be the only person serving prison time for a crime that defendants also committed).  We disagree.  A prosecutor may not argue that the jury must convict as part of its civic duty, because such arguments inject issues broader than the guilt or innocence of the accused, and play on the fears and prejudices of the jury. *Bahoda*, *supra* at 284-285.  Here, however, the prosecutor expressly linked her statements that asked the to jury find defendants guilty because such a verdict was fair and correct "to the facts and the law."  The prosecutor was asking the jury to convict on the basis of evidence produced at trial.  "Because the prosecution argued that the crime had been established beyond a reasonable doubt, these remarks do not constitute an assertion of personal belief by the prosecutor in defendant's guilt or an argument that the jury should convict the defendant regardless of the evidence." *People v. Matuszak*, 263 Mich. App. 42, 56; 687 NW2d 342 (2004).  Thus, defendants have not established plain error on the basis of a "civic duty" claim. *Id.*

*People v. Glenn*, No. 260500, slip op. at p. 6.

The Michigan Court of Appeals properly found that there was no prosecutorial misconduct on these grounds.  In closing argument, the prosecutor asked for a guilty verdict against petitioner and Worth:

> And I assure you that I have no love lost for John Zardus, but a verdict of guilty as charged is not only the correct one according to the facts and the law, and the fair one for Sue Schertz , or the just one, I guess, for Sue Schertz, but it's also the fair one for John Zardus because he would otherwise serve out a solitary sentence for a crime of which two other people -- are equally guilty.  Thank you.

Trial Trans. at p. 926.

The prosecutor closed her rebuttal argument by stating:

So again, ladies and gentlemen, the only verdict that's fair to the facts, to the law, to the victim, and also to the co-defendant is guilty as charged.  Thank you.

*Id.* at p. 958.

"Generally speaking, a prosecutor has a 'duty to refrain from improper methods calculated to produce a wrongful conviction.'"  *Puertas v. Overton*, 168 Fed. Appx. 689, 701 (6th Cir. 2006), quoting, *Viereck v. United States*, 318 U.S. 236, 248 (1943).  However, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible."  *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001) (internal quotation marks omitted).  In this case, the prosecutor asked the jurors to reach a fair verdict "according to the facts and the law."  The prosecutor's reference that the verdict would be fair to Zardus and Schertz was not an impermissible appeal to the jury to act as a "community conscience."

Since the state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented, 28 U.S.C. § 2254 (d), petitioner is not entitled to relief on this claim either.

### 6.    The repeated and varied instances of prosecutorial misconduct deprived petitioner of a fair trial and could not have been corrected by a limiting instruction.

Petitioner contends that the "sum total of [the prosecutor's] improper conduct was sufficiently flagrant to warrant habeas relief."  Petitioner's Brief at p. 22.

The Michigan Court of Appeals addressed this issue in pertinent part as follows:

> Both defendants argue that the cumulative effect of the prosecutor's misconduct denied them a fair trial. The cumulative effect of several errors may warrant reversal where they deny the defendant a fair trial. *People v. McLaughlin*, 258 Mich. App 635, 649; 672 NW2d 860 (2003). However, only actual errors are aggregated to determine their cumulative effect. *People v. Rice (On Remand)*, 235 Mich. App 429, 448; 597 NW2d 843 (1999). Here, defendants have not established misconduct. We therefore reject defendants' claims that the cumulative effect of multiple errors requires a new trial.

*People v. Glenn*, No. 260500, slip op. at p. 12.

The Michigan Court of Appeals properly found that there was no prosecutorial misconduct on these grounds. This court has not found any instance of prosecutorial misconduct. In the absence of any error, petitioner's claim of cumulative error is not supported by the record and should be denied. *See generally, United States v. Allen*, 106 F.3d 695, 701 (6th Cir. 1997) (the defendant's claim that the district court deprived him of his right to a fundamentally fair trial due to cumulative errors was meritless "for the simple reason that the district court did not commit the errors alleged").

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

## B.     Ineffective assistance of counsel

In the alternative to his claims of prosecutorial misconduct, petitioner contends that his counsel provided ineffective assistance for allowing the prosecutor to engage in this conduct at trial. The Michigan Court of Appeals addressed the claims of ineffective assistance of counsel as follows:

28

Defendants failed to move for a new trial or an evidentiary hearing on the basis of ineffective assistance of counsel. Therefore, this Court's review is limited to mistakes apparent on the record. *People v. Thomas*, 260 Mich.App 450, 456; 678 NW2d 631 (2004).

\*       \*       \*

The only specific argument Glenn asserts is that counsel acted unreasonably when he failed to object to the prosecutor's derogatory comments during closing argument. Glenn maintains that the failure to object to the comments about witness credibility or the derogatory statements is "much less susceptible to the argument that it should be considered sound trial strategy." *Hodge v. Hurley*, 426 F3d 368, 386 (CA 6, 2005). Glenn also argues that, because the credibility of the "defense witnesses" was critical, the improper comments were highly prejudicial.

Because the prosecutor's arguments were not improper (see above), we reject defendant's claim. [FN8] Counsel is not ineffective for failing to make a futile objection. *Thomas, supra* at 457. In addition, any prejudice was cured by the trial court's jury instructions; ergo defendant has failed to show actual prejudice in support of his ineffective assistance claim. Because the prosecutor's statements were not gratuitously insulting, and the trial court's jury instructions were sufficient to cure any prejudice, defendant has failed to show that he is entitled to relief due to ineffective assistance.

[FN8. In addition, it is conceivable that defense counsel failed to object because he (strategically) thought the prosecutor's remarks would alienate the jury.]

*People v. Glenn*, No. 260500, slip op. at 18-20.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In making this determination, the court "must judge the reasonableness

of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original).

The court has found no prosecutorial misconduct in this action. In the absence of such misconduct, there was no basis for petitioner's trial counsel to object to the prosecutor's statements. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court"). On the contrary, as the Michigan Court of Appeals observed, counsel's failure to object during closing argument could have been a reasonable trial strategy. "[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint." *Schauer v. McKee*, 401 Fed. Appx. 97, 101 (6th Cir. 2010), quoting *United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006).

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based

30

on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner is not entitled to relief on this claim.

### C.      Petitioner's right to confront Johnson

Petitioner contends that the prosecutor failed to disclose evidence regarding witness David Johnson, and that Johnson attempted to enhance an offer of leniency extended to him by offering to testify against petitioner. The record does not support this contention.

It does not appear that Johnson was a cooperative witness. Johnson initially refused to testify at petitioner's trial, which led the court to find him in contempt and commit him to the custody of the Alger County Sheriff. Trial Trans. IV at p. 667 (docket no. 20). Later that day, Johnson changed his position and agreed to testify. *Id.* at p. 703. The gist of Johnson's testimony was that he knew petitioner and co-defendant Worth from jail, having been in the same cell with them for a few days  and in the same cell block for about three or four months. *Id.* at pp. 704-06. Johnson testified that he heard petitioner and Worth talking about the armed robbery in Christmas. *Id.* at p. 706. Johnson heard them discussing the theft of a BB gun from Walmart, which occurred before the armed robbery. *Id.* at pp. 706-07. Johnson also heard them discuss that petitioner and Worth went into the store (i.e., the Pair-a-Dice Inn), bought pop, came out of the store, and then Zardus when into the store and "did the robbery." *Id.* at pp. 711-12. Johnson testified that the gist of the discussion was that petitioner and Worth went back to the car, parked the car on a side street, and then sent Zardus into the store. *Id.* at p. 712. Petitioner and Worth were "always yelling about something" and made statements to the effect that Zardus would "need to take the rap" for the robbery. *Id.* at pp. 713-14. Petitioner, Worth and Zardus also discussed a separate "story" that

31

involved buying pot from someone named "Paco" to explain their actions at the time of the robbery. *Id.* at p. 715.

Johnson testified that petitioner and Worth "squeezed" (pressured) Zardus into the robbery and that Zardus "just didn't think for himself very much." *Id.* at pp. 718-20. Johnson also testified that petitioner and Worth heard them talking about the robbery like "it was a big joke." *Id.* at p. 723. Johnson stated that he did not think it was a joke "because if it was my wife in there, I'd have been pretty pissed." *Id.* Johnson also testified that he prepared a written statement about this matter on August 26, 2004 (about two months before the trial). *Id.* at p. 706. Johnson testified that he did not receive anything in exchange for information regarding the case against petitioner. *Id.* at p. 710.

At petitioner's motion for a new trial, the parties stipulated that the government engaged in unsuccessful plea negotiations with Johnson regarding a charge of arson unrelated to petitioner's charge of armed robbery. Motion for New Trial Trans. at pp. 3-4 (docket no. 23). David Bowerman, an employee with the Alger County Sheriff's Department, testified that he discussed Johnson's proposed testimony against petitioner. Motion for New Trial Trans. at pp. 20-21. In June 2004, approximately four months before petitioner's trial, Johnson was not willing to testify against petitioner. *Id.* at p. 21. However, Mr. Bowerman eventually obtained a written statement from Johnson in August 2004. *Id.* at pp. 21-22. At that time, Bowerman told Johnson "that he would not be getting anything for his cooperation in this matter." *Id.* at p. 22. Johnson agreed to give the statement against petitioner, having told Mr. Bowerman that "he thought about it for a while" and "that he didn't really care for the subjects" and that he was having disagreements with petitioner in the cell block. *Id.* at pp. 22-23.

The trial judge denied petitioner's motion for a new trial stating in pertinent part as follows:

> First on the motion for a new trial, as the Court would understand the law of *Brady* requires that material evidence favorable to the accused be disclosed. This also includes evidence that would assist the accused in impeaching an adverse witness.

> And the issue that this motion presents is did the failure to disclose a rejected plea offer in an entirely separate case breach the Brady rules? And if so, is there any reasonable likelihood that the jury would have acquitted had they had the advantage of that information.

> In looking at this issue, the Court has reviewed the transcript and particularly the testimony of Mr. Johnson and the cross examination by Mr. Gregory [petitioner's counsel]. And -- And here the -- the motivation was explored fully before the jury. There was no plea agreement, none ever existed. There is no claim of a secret agreement. There is no evidence that even if there was a plea agreement, that it had anything to do with the testimony that Mr. Johnson had. And, in fact, really his credibility or that which the jury could make a finding on credibility was pretty well neutralized by his -- his response to the People, so that that issue would have been before -- the jury.

> Here there was also a timely furnishing of the witness written statement. And the Court would -- does not find that the failure to provide the -- an offer, a plea offer in an entirely different case, which there is no evidence was for testimony or for anything other that [sic] a possible trusteeship, would have led -- misled the jury or any likelihood that the jury would have acquitted had all the inferences sought from that impeachment be [sic] resolved in favor of the defense. The Court denies the motion for a new trial.

Motion for New Trial Trans. at pp. 34-36 (docket nos. 23, 30).

The Michigan Court of Appeals addressed petitioner's *Brady* claim as follows:

### A.

First, Glenn argues that he is entitled to dismissal of the charges or a new trial because the prosecution failed to disclose evidence. A claim of prosecutorial misconduct based on a failure to disclose evidence is reviewed de novo. *People v. Ackerman*, 257 Mich.App 434, 448; 669 NW2d 818 (2003). This Court considers the alleged misconduct in context to determine whether it denied defendant a fair and impartial trial. *People v. Reid*, 233 Mich.App 457, 466; 592 NW2d 767 (1999).

33

B.

Due process requires disclosure of evidence in the prosecutor's possession which is exculpatory and material. *Brady v. Maryland*, 373 U.S. 83; 83 S Ct 1194; 10 L.Ed.2d 215 (1963); *People v. Lester*, 232 Mich.App 262, 280-281; 591 NW2d 267 (1998). "Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule because, if disclosed and used effectively, such evidence 'may make the difference between conviction and acquittal.'" *Id.* at 281, quoting *United States v. Bagley*, 473 U.S. 667, 676; 105 S Ct 3375; 87 L.Ed.2d 481 (1985). In order to establish a *Brady* violation, a defendant must prove that: (1) the state possessed evidence favorable to the defendant; (2) he neither possessed the evidence nor could have obtained it himself with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *Lester*, *supra* at 281-282.

In the instant case, Glenn challenges the prosecutor's failure to disclose witness David Johnson's [FN1] plea negotiations with the prosecutor. Johnson was charged with being as a fourth-habitual offender and with arson. After Johnson testified, the trial court conducted contempt proceedings because of Johnson's initial refusal to testify. Johnson, who had posted bond, had been arrested on a material witness warrant to secure his testimony. During the proceeding, the court discussed a letter written by Johnson's attorney to the prosecutor offering Johnson's testimony in exchange for a complete dismissal of the charges against him. Apparently, this was the first time Glenn and Worth's counsel learned of any plea negotiations between Johnson and the prosecution. In their motions for a new trial, Glenn and Worth argued that the prosecutor should have disclosed a plea offer that was made to Johnson in his arson case before Glenn and Worth's trial. Glenn and Worth also argued that the prosecutor should have revealed the letter from Johnson's attorney offering his testimony in exchange for the dismissal of the arson case.

Johnson's written statement was made on August 26, 2004. Around September 17, 2004, the prosecutor made Johnson an amended plea offer. Johnson could plead guilty and essentially be sentenced to time served. [FN2] The prosecutor stated that the offer was an attempt to save the expense of having to provide expert witness fees for Johnson. Johnson later rejected this offer and hired new attorneys, one of whom then made the subsequent request to the prosecutor on October 12, 2004. The prosecutor maintained that she ignored Johnson's letter offering his testimony in return for dismissal of the charges because it was an "outrageous" suggestion. Johnson eventually went to trial and was convicted.

At the hearings on defendants' separate motions for a new trial, retired Alger County Sheriff Deputy David Bowerman, who took Johnson's statement, testified that he approached Johnson in the jail and asked if he had heard anything about the armed robbery case. Johnson told Bowerman that Glenn and Worth had talked about

the case, but that he, Johnson, was unwilling to testify. A month later, Bowerman again approached Johnson, who indicated that he wanted to cooperate. Bowerman told Johnson that he would not receive anything for his cooperation. Johnson stated that he still wished to testify because he did not like defendants because they had fought with him.

At Worth's hearing, his counsel conceded that there was no evidence that any plea offer involving testimony was ever made to Johnson. He also claimed that Johnson's trial testimony did not appear credible.

MCR 6.201(B)(5) requires the prosecutor to disclose upon request "any plea agreement, grant of immunity, or other agreement for testimony in connection with the case." Here, Johnson did not enter into an agreement with the prosecutor. However, defendants rely on *People v. Atkins*, 397 Mich. 163, 173; 243 NW2d 292 (1976), to argue that the prosecutor nevertheless had a duty to disclose its initial rejected offer to Johnson, and Johnson's later offer to the prosecutor. In *Atkins*, which dealt with the testimony of a co-conspirator, the Court held that reasonable expectations of leniency should be disclosed to the defense:

> Where an accomplice or co-conspirator has been granted immunity or other leniency to secure his testimony, it is incumbent upon the prosecutor and the trial judge, if the fact comes to the court's attention, to disclose such fact to the jury upon request of defense counsel. The same requirement of disclosure should also be applicable if reasonable expectations, as opposed to promises, of leniency or other rewards for testifying resulted from contact with the prosecutor. [ *Id.* at 173 (footnote omitted).]

However, the instant case does not involve the testimony of a co-conspirator or accomplice. Thus, *Atkins* is not applicable. Moreover, even if *Atkins* were applicable, defendants have not shown that Johnson had a "reasonable expectation" that he would receive leniency in exchange for testifying against defendants. The statements and evidence surrounding the prosecutor's plea offer support the prosecutor's contention that it was given solely to save the cost of expert witness fees. None of the evidence presented by defendants revealed that Johnson's decision to talk about what he had heard was due to anything other than personal animosity toward defendants. Additionally, while Johnson made a separate offer to the prosecutor, this occurred after he provided his written statement about defendants' inculpatory admissions and after he had been told that he would receive nothing in return for his cooperation. The prosecutor ignored Johnson's later attempt to obtain a dismissal of the charges against him.

Under the circumstances, defendants have failed to provide any evidence of a quid pro quo arrangement, or shown that one was reasonably expected by Johnson.

Therefore, the prosecutor did not improperly withhold exculpatory evidence. *Lester*, *supra* at 281-282.

> [FN1. Johnson, an inmate who shared a cell with defendants, testified at trial to statements he overheard defendants make about the robbery. Johnson also provided a written statement that was used at trial against Glenn and Worth, indicating that defendants "sent" Zardus into the store.]

> [FN2. The prosecutor had already offered to drop the habitual offender charge in exchange for a guilty plea.]

*People v. Glenn*, No. 260500, slip op. at 2-4.

The Michigan Court of Appeals properly found that there was no *Brady* violation with respect to the plea offers extended to Johnson. Under *Brady* and its progeny, a criminal defendant's due process rights are violated when the prosecution suppresses exculpatory evidence. *Williams v. Coyle*, 260 F.3d 684, 706-07 (6th Cir. 2001). "Exculpatory evidence includes evidence regarding the reliability of a witness." *Id.* at 707, citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Carter v. Bell*, 218 F.3d 581, 602 (6th Cir. 2001). The failure to disclose exculpatory evidence is material where the evidence creates a "reasonable probability of a different result," *Id.* citing *Bagley*, 473 U.S. at 678, which exists when "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Id.* quoting *Kyles*, 514 U.S. at 434 (quoting *Bagley*, *supra*). Under *Brady*, such exculpatory evidence includes the contents of plea agreements with key government witnesses, which the prosecution must reveal. *California v. Trombetta*, 467 U.S. 479, 485 (1984).

In this case, there is no evidence that Johnson had a plea agreement or that his testimony was influenced by any such agreement. While Johnson rejected a plea offer in an

unrelated arson case, there is no evidence the plea offer was conditioned on Johnson providing testimony against petitioner.  Furthermore, counsel for petitioner and co-defendant Worth tested Johnson's reliability at trial when they cross-examined him about the circumstances leading to his testimony.  Trial Trans. IV at pp. 720-28.  Under these circumstances, the court concludes that there no "reasonable probability" that disclosure of Johnson's unsuccessful plea negotiations was exculpatory evidence which would have led to a different result.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Accordingly, petitioner is not entitled to relief on this claim.

### V.      Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  February 14, 2012                      /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).